Good morning, and may it please the Court. I'm Jeffrey Ehrlich for the Appellate Sentinel Therapeutics. I will reserve four minutes of time for rebuttal, and I realize I'll be managing my time with the timer. This is an appeal by Sentinel of a summary judgment that was entered in favor of U.S. Specialty based on the goods and products exclusion that's in the insurance policy, and the parties agree that this diversity action is governed by California's rules of insurance policy interpretation. And Sentinel contends that one of these policy rules is dispositive of the goods and products exclusion. That's the rule that was articulated by the California Supreme Court in the McKinnon case, which holds that an exclusion does not bar coverage if the policyholder can advance a reasonable interpretation of the exclusion that permits coverage. In applying this rule, the Court does not weigh the various interpretations advanced by the parties and then select the best one. So it's not like... Counsel, let me ask you this. I mean, obviously, we know what the district court did, but your tolling agreement characterizes the investigation as, quote, unquote, arising out of Sentinel's pharmaceutical products. So do you dispute that characterization, and if not, why isn't that just dispositive of whether the goods and products exclusion applies? I mean, I mean, if you're up for cross-examination, that would be the first thing I would ask you. The tolling agreement was entered into two years after the claim was submitted, so I don't think that you can just... But it says that the investigation as arising out of Sentinel's pharmaceuticals, and you agreed to that, so why doesn't... Ergo, that's exactly what the exclusion covers in the goods and products. Your Honor, the tolling agreement says it's arising, essentially, to this broad aspect of the marketing, sales, et cetera, but it doesn't identify exactly what the healthcare offenses are being investigated. No one knows which healthcare offenses are being investigated, as we've articulated in the brief. There are a lot of... Okay, so if I were going to pin you down, you don't disagree that that's what it says. You just say it means something other than what I'm saying it means. The tolling agreement has one sentence that broadly defines sort of the overall scope of the investigation, but I don't think that the coverage question depends or is answered by the issue of whether there's one sentence in the tolling agreement that broadly kind of describes the overall nature of the investigation. When you look at the actual healthcare offenses that are being investigated, as we've pointed out, I think it's important to note that none of these offenses... First of all, U.S. specialty can't point to any which ones are actually being investigated, and not all of them would have any connection at all to Sentinel's products. We're talking about theft or embezzlement from an employee benefit plan, 18 U.S. Code Section 664, or 18 U.S. Code 66, theft or bribery discerning programming... Okay, so I guess I could characterize as that what that sentence certainly doesn't help you, but you're telling me why it doesn't hurt you. I don't think it's dispositive, Your Honor. I think that you need to look at fundamentally the rules of insurance policy construction and to take a look at what the policy says and to look at the other terms of policy and consider all the things that California courts... Let me try to pose a question or two. I don't think there's any question, but there's a claim here, and that tolling agreement language, I think, clearly establishes that there's a claim here. It seems to me that the issue is whether or not this claim arises out of goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, et cetera, et cetera. So I think it's a discrete issue. So we have a claim here. What is your position in terms of whether or not this does arise out of goods or products manufactured? It seems to me that's kind of a standalone question, and I don't know whether there's any case authority that addresses that issue. Can you opine on that for me, please? Well, Your Honor, I guess our view is that the key question is does the claim arise out of the products, not does the claim arise out of the manufacturing, sale, et cetera, of the products. Of the products. Does it arise out of goods or products? Right. And so our view is that that provision arising out of the products can be reasonably construed. One reasonable construction would be to limit it to claims that are arising or based on some aspect of the products themselves, how they perform, how they don't perform, something about the products, the condition of the products. Now, U.S. Specialty said, well, that's not what it says. You're trying to add language. But we have pointed out, and I think this is important, that U.S. Specialty on page 33 of its answering brief cited a case to this court called Allied Property Insurance v. Dick Harris, Inc. It's a 2013 decision from the Eastern District of California. And in that case, they cited for as instructive on showing the court how an exclusion that has this arising out of language can reasonably be construed. And so in this case, Allied Property, the injured claimant was trampled by a horse that had escaped from the policyholder's property during a simulated Old West event. And then the trampled party filed a complaint against the policyholder who owned the property and said that they were negligent for, among other things, failing to contain the horses at the event and failing to make adequate repairs and improvements to the fencing that surrounded the property. And the insurance company argued that there was an exclusion in the policy for bodily injury arising out of a premises owned by the insured. And the insurer there made the same arguments the U.S. Specialty makes here, talking about the breadth of arising out of and argued that it only needs to be an incidental relationship. And the district court in Allied Property acknowledged that the policyholder's liability, the quote is, could be described as arising out of the ownership of the property. That's on the page. Well, let me interrupt. Arising out of is a broad phrase. I don't think it's ambiguous. And I think that's pretty clear that the arising out of is satisfied. But what case do you cite in California that really interprets what it means to arise out of goods or products, manufactured, et cetera, which is what we're talking about here? The closest decision that specifically talks about arising out of a product is this court's decision in Fireguard Sprinkler Systems, which was decided under Oregon law. But in that case, the contractor built... And got a nice circuit case as a district court case. A nice circuit case, 864F2nd, 648, 654. I'm going to see whether that answers this question. Go ahead. So in that case, there was an exclusion that barred claims for claims arising out of the policyholder's products. And in that case, the product was a water tower. And the water tower, the insured party who built it, had failed to cite it correctly, negligently. And the insurance company held that the claim was barred because the claim arose out of the product, which was having some incidental relationship to the product. What is the goods and product in this particular case? What specifically are we talking about? Well, the Senate only has two products, the Abstrol and Leforfanol. So it has to be one of those. And all of the subpoenas that are issued relate to how that product is sold or marketed. In other words, the claim seems to be about what an abstrol says about those products. Well, why doesn't the exclusion clause then apply? Because the exclusion only applies to claims that arise out of the products themselves or the owner. And here, that exclusion shouldn't be arising out of, shouldn't expand the scope of the exclusion so extensively that a claim that's based on what Sentinel might say about its product is deemed to arise out of the product. In the same way that in the Allied Property case, the court said that an exclusion for claims arising out of the property means that the claim has to be based on some condition of the property. It's not enough that the claim happened on the property. And so we think Allied Property shows that this kind of exclusion, this arising out of exclusion is reasonably interpreted. One reasonable interpretation. This isn't a situation where the court is equivalent to kind of construing a statute. And you're obligated to come up with the ultimate best or most reasonable interpretation of that statute. In California, the policyholder can say, this is a reasonable interpretation. And the court might say, that's not really the interpretation I think is the most reasonable. But the question is simply, is it reasonable? And I think Allied Property shows that it clearly is. And I'd also point the court to the HS Services, Ninth Circuit decision, where the exclusion there barred coverage for claims arising out of an employment termination. And in that case... But that's so far removed from what we're talking about here. I don't see where that would be relevant. You're talking about an employment situation. You're talking about something entirely different. Well, Your Honor, I mean, the interpretation that Sentinel is using to say that arising out of products extends to whatever you say about your product or having anything to do, any incident of your product, would have resulted in the exclusion in HS Services being applied. And this court said, even if you issue a public statement that says the reason that I fired this person is because of acts of dishonesty. So you write in the statement, you've tied the termination to this different defamatory statement. The court said that an exclusion for claims arising out of the termination of employment doesn't apply, even though the court acknowledged that literally, the exclusion would apply. But the court said, we're not going to interpret it as broadly as semantically possible. And so our position, as we've articulated it is, that a claim that is based on how Sentinel markets its products, or what it says about the products, is not necessarily a claim that arises out of the products themselves. That it's reasonable. Just really quickly, I know you want to save rebuttal time. You're requesting certification at this point, but you did not request it in the district court. Is that correct? Well, it is correct, but there's no mechanism for certification in the district court. No, but you can request it at that point. There is some indication that when you wait and you lose, and then you request it. You didn't request it in the district court, but you're requesting it here. Is that right? Your Honor, in California, there's no mechanism to have a district court decision go to the California Supreme Court. The Supreme Court rules, they only accept certification from the Court of Appeal, not from the district court. So there's no reason to make a request that the district court cannot act on. Okay, I don't want to take any more of your time if you want to reserve. I reserve the rest of my time. Thank you. All right. Thank you, counsel. Response? Good morning. May it please the Court? I'm Joe Bailey from Clyde & Co., Counsel for U.S. Specialty. When U.S. Specialty agreed to issue a Director's and Officer's Liability Insurance Policy to Sentinel, it insisted on including a broadly worded products exclusion. That exclusion doesn't affect coverage for Sentinel's directors and officers, but bars coverage for Sentinel for all claims arising out of products sold or marketed by Sentinel. The district court correctly held that the exclusion applies to an investigation by a federal opioid task force into whether Sentinel committed any wrongdoing in connection with its opioid product business. This court should affirm for that reason, or alternatively, because either a prior acts exclusion applies, or any claim here isn't for wrongful acts and doesn't fall within the insuring agreement. I'll begin first with a products exclusion, which applies here for three reasons. First, the exclusion provides that it applies to claims arising out of products sold or marketed by Sentinel. That requires an analysis of the relationship between the claim and the products. Sentinel would rewrite... Let me interrupt. You don't question that there was a claim here. It seems like that's pretty clear to me. You have this waiver of the statute of limitations, the tolling, et cetera, specifically in the insurance contract that that satisfies a claim. You're not asserting that that's not correct, are you? That's correct, Your Honor. U.S. Specialties consistently acknowledge that the tolling agreement, once it was entered into, is a claim as defined by the policy. Right. Sentinel would rewrite the exclusion to apply only to claims focused on some aspect of its products, but that's not what the exclusion says. The Octavius Court rejected a similar attempt by an insured to limit a products exclusion to only a subset of claims arising from its products. That seems to be the best case because it does bear some correlation to what we're talking about here. Do you have any California case? What would be the best California case you have that would be directly on point here? Well, Octavius is a California case, Your Honor. And then you've got... Oh, I'm sorry. It's a fourth district court in California? Yes. Yes. It's a California state court decision. And then there's also the Anda case, which was out of the Eleventh Circuit, but it's applying California law. And Octavius relied in part on Anda. Octavius is probably the closest, but it's not the Supreme Court of California we're talking about. No, that's correct, Your Honor. What is the best case out of the Supreme Court of California? If there is such a case that would be directly on point or dispositive? There's no on point case set at the Supreme Court of California, but the Supreme Court of California has said repeatedly that plain policy language must be enforced as written. I think we cited several of those cases, City of San Diego and several others, including when used in exclusion. You have those board-based principles, I understand. But we agree that there is not a Supreme Court decision from California that deals with this type of situation. It's kind of a unique situation, but nonetheless, it seems that we have to know what it means for goods and products in order to resolve this case, I assume. On the certification issue, you oppose it generally. Can you summarize why you don't think that would be helpful here? Yes, Your Honor. The certification is not appropriate because we believe that the principles on which this case can and should be decided are all well-established under California law. Broad, plain language in an exclusion gets applied as written. This court has repeatedly held that. California courts have repeatedly held that. The breadth of arising out of has also been established. This case doesn't present the extraordinary circumstances that would be needed for certification because there's only, besides this case, only one other case we're aware of, which is from outside of California, the Oceans case, presenting similar circumstances to the issues raised in this case. And that's under the prior acts exclusion, not the goods and products exclusion. I think you're saying that this is such an odd factual dynamic that it's not likely to really result in any real law that we ought to reach out to the California court to expose, I guess. Yes, Your Honor. That's one basis that certification is not appropriate here. But also, again, we think the principles under which the exclusion unambiguously applies are well established under California law. So, if I understand you correctly, I mean, if the California Supreme Court decided the issue, it would be dispositive of the case. But all insurance policies are written slightly differently. And you're saying that it probably wouldn't be of great value to the insurance community because you still have to look at the facts of every case. That's correct, Your Honor. All right. I understand your argument. I'm just curious, Counselor, do you know if the California Supreme Court has accepted certification of an insurance case? But the California Supreme Court turned down the certification request that I sent. So, I was just curious whether or not you are aware if the California Supreme Court has accepted a certification request to clarify insurance law. I'm not aware, Your Honor. So, going back to the scope of the exclusion, again, it applies to claims arising out of the relationship between the two. Now, Sentinel has argued that the Allied Property case justifies its attempt to read some aspect of into the exclusion, even though it's not there. Allied Property doesn't help Sentinel. That involved an exclusion for injuries, not for claims, arising out of uninsured premises. And the court held that that exclusion didn't apply to injuries caused by a horse. In doing so, the court noted that an injury can only arise from some condition of the premises, a phrase that Sentinel has seized upon. But that just reflects the premises can't cause injuries on their own. It's the conditions of the premises that cause injuries. So, Allied Property doesn't help Sentinel's argument here. Sentinel also asserts that interpreting the exclusion as broadly written would turn it into a sales and marketing exclusion. That's not true. Coverage would remain for claims that don't arise from Sentinel's products. The exclusion refers to claims arising out of products sold or marketed by Sentinel. That's what Sentinel does with its products. There's nothing unfair with applying the exclusion to claims that arise out of Sentinel's products and also involve sales and marketing. Exclusion C in the policy already bars coverage for claims for bodily injury or death. The product's exclusion goes past that and bars coverage for all other claims against Sentinel arising from its products. The second reason the exclusion should apply here is that any claim falls well within its scope, even before you consider the breadth of the meaning of arising out of. Sentinel's opioid products are central to any claim here. The tolling agreement, which we've discussed as a claim, refers to potential claims against Sentinel arising out of the manufacturing, marketing, sale, and distribution of its opioid products. Again, the full life cycle of the opioid products. What type of policy would you take out if you wanted to have coverage for a claim? The claim definition was amended so the criminal investigation qualifies as a claim, but only when an insured person receives a target letter or similar document in an investigation of such an insured person. So there are a couple of challenges for Sentinel there. There may be other lines of policies that may provide coverage depending upon their terms, but in concept they could have negotiated coverage for something like this and the policy they purchased does not provide that coverage. In other words, it could have gotten coverage for an investigation conducted into its product one way or the other, I guess. If someone's willing to negotiate to issue that entity coverage to an opioid company in the current climate, then yes, they could have. My client insisted on the inclusion of this broadly worded exclusion before agreeing to issue the policy. So that kind of goes towards that issue. The opioids are also central to the subpoenas in the investigation. Again, this is a investigation by an opioid task force working to target anyone who illegally profited from opioids and it's seeking information about all aspects of Sentinel's opioid business. No wrongdoing has been identified here. This is a product inspired investigation in search of on one hand and the products on the other. It's also irrelevant whether any federal healthcare offenses under investigation are themselves product centric. Under the exclusion and the applicable case law, the legal theories aren't relevant. It's the relationship between the claim and the products that is. The third reason the exclusion applies here is the breadth of the exclusion, the enforcement of which doesn't render coverage for Sentinel Illusory and doesn't conflict with the policy's other terms. Time and time again, this court and other courts applying California law have held that the phrase arising out of is used in an exclusion is unambiguously broad. This well established line of cases does not contravene the California Supreme Court's Partridge decision. Partridge observed that an attenuated connection may satisfy the phrase arising out of as used in an insurance clause but doesn't satisfy that phrase as used in an exclusion. We agree with that. That's precisely why the plain language interpretation enforced by the district court doesn't render entity coverage under this policy illusory. Sentinel continues to be covered for any number of claims that don't arise from its products. For instance, criminal or civil investigations or suits by the government for tax fraud, bank fraud, insurance fraud, money laundering, certain FCPA violations, antitrust conspiracies involving, for instance, no poach agreements or geographic allocation agreements, and more would all fall outside the exclusion. Entity coverage would also remain for tortious interference suits by competitors, fraud or fraudulent inducement claims by banks, creditors, vendors, consultants, unlawful discrimination claims by third parties, and all manners of employment practice claims. Sentinel also tries to narrow the exclusion by relying on cases that involved exclusions that more narrowly apply to injuries or property damage rather than to claims. That's a very different analysis from whether a claim arises from excluded subject matter. For instance, in FireGuard, which Sentinel has relied upon, the question was whether an exclusion for property damage arising out of an insured's products applied to property damage from a landslide allegedly caused by the improper installation or improper preparation of a site for the installation of the insured's products. That's a very different analysis. The property damage there was caused by the installation services, which weren't part of the product. FireGuard is distinguishable. Finally, applying the exclusion as written doesn't conflict with the other parts of the policy. Yes, the exclusion carves back the scope of coverage for claims for wrongful acts that otherwise fall in the insuring agreement. That's what every exclusion in every insurance policy does. Sentinel also points to the adjudication requirement in Exclusion B, but Exclusion B doesn't purport to address all criminal investigations, nor does it create coverage for anything. It's an exclusion. The adjudication requirement simply provides Exclusion B can't apply to an adjudication. There's not a similar requirement in the goods and products exclusion. For all these reasons, under any reasonable interpretation of the exclusion, it should apply to bar coverage here, and the court should affirm for that reason. But in the brief time that I have remaining, I just wanted to briefly cover the alternative grounds for affirming. The court should have also affirmed because either a prior acts exclusion applies or any claim here doesn't fall within the insuring agreement. If an investigation into whether wrongdoing occurred between 2015 and the present is a claim for wrongful acts, then the prior acts exclusion bars coverage. And if it's not a claim, we don't really know whether it falls within or without that time frame at all. That would be a factual determination that we really don't have before us at the present time, I suspect. Well, the question is whether looking into whether wrongdoing occurred during that time period satisfies the requirement that wrongful acts be insufficient to satisfy that requirement, then it wouldn't fall within the insuring agreement. And if it is sufficient to satisfy that requirement investigation into whether wrongdoing occurred during a given time period, that falls squarely when the prior acts exclusion and the oceans court reached a very similar conclusion under a subsequent. How do we know that at this particular point? Well, the that goes to the very point about whether this is really a claim for wrongful acts yet when no wrongful acts have been alleged to have occurred when the government's just looking into whether anything happened. So again, that goes back to whether the insuring agreement has been triggered. Oceans noted the tension between the two arguments by a policy holder. So for for those additional reasons, this court should affirm unless the court has any further questions. That's all that I have. It appears not. Thank you, counsel. Rebuttal. Thank you. You're muted, counsel. Sorry about that. Thank you. I'd like to jump back into that tolling agreement. I didn't have the text directly in front of me when Judge Callen asked me a question. So the critical language I was asked about says that the United States's investigation is ongoing and includes consideration of potential criminal and civil claims against Sentinel arising out of the manufacturing, marketing, sale and distribution of pharmaceutical products. So in essence, that sentence doesn't say that they're investigating claims arising out of the products. It says that the investigation arises out of manufacturing, marketing, sale and distribution. The exclusion doesn't say that it excludes claims arising out of the manufacturing, marketing, sale of products. Very critically, and this is key to our argument, it says that it excludes claims arising out of products and then identifies which products that it's referring to by saying the products that Sentinel manufactures, markets and sells. And so I don't think that you can just convert an exclusion for claims arising out of products into one that is an exclusion for claims arising out of the marketing and sale of the products. Those are distinct things. And had U.S. Specialty phrased all of the language it needed was right in the exclusion, but it didn't make the arising out of, refer back to the manufacturing, marketing and sale. It made it refer to the products. And that's the key distinction. Counsel suggests that the closest California decision is the Actavis decision. And as we've pointed out, Actavis is clearly distinguishable and it's distinguished from what a way that's the, the, the policy language was different in Actavis and it specifically included or excluded claims that went to the warranties and statements that the manufacturer, the policy holder made about its products. And as a result, when the policy holder argued that the exclusion couldn't apply because no one had alleged it was anything wrong with its products, the court said that doesn't matter because the exclusion is broader and it doesn't just connect to the products, it connects to the statements that you make about the products. And that's not this case. Finally, I would point out that all of the arguments or the list of claims that counsel suggests would, would still be included here when you take out the employment related ones. Now, this policy has a, a sublimit of only a million dollars, but it has a five million dollars for everything that's not employment related. But whenever the U.S. specialty tries to articulate a claim that wouldn't be employment related, all they can do is articulate claims that would fall within the scope of the exclusion as they define it, because they define the exclusion as anything having anything to do with Sentinel's products. And since I'm out of time, I would ask the court to reverse and thank you for its consideration. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court. The final case on calendar, Golden versus, Rogers versus Golden, has been submitted on the brief that completes our calendar for the morning. We are on recess until 9.30 a.m. tomorrow morning. This court stands on recess until 9.30 tomorrow morning.
judges: RAWLINSON, CALLAHAN, Block